**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Attorneys for Plaintiff*

*- additional counsel on signature page -*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEEPAK VENKATACHALAPATHY, Individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>                    v.<br><br>NETFLIX, INC., REED HASTINGS, and SPENCER NEUMANN,<br><br>                              Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Deepak Venkatachalapathy ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Netflix, Inc. ("Netflix" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Netflix between April 17, 2019 and July 17, 2019, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

2

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

4.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as Defendants conduct business and the Company is headquartered in this Judicial District.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying Certification, purchased Netflix securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.     Defendant Netflix provides Internet entertainment services, primarily streaming services. The Company is incorporated in Delaware and its principal executive offices are located at 100 Winchester Circle, Los Gatos, CA 95032.   Netflix securities are traded on NASDAQ ("NASDAQ") under the ticker symbol "NFLX."

8.     Defendant Reed Hastings ("Hastings") has been the Chief Executive Officer ("CEO") of Netflix throughout the Class Period.

9.     Defendant Spencer Neumann ("Neumann") has been the Chief Financial Officer ("CFO") of Netflix throughout the Class Period.

10.     Defendants Hastings and Neumann are sometimes referred to herein as the "Individual Defendants."

11.     Each of the Individual Defendants:

---

a)  directly participated in the management of the Company;

b)  was directly involved in the day-to-day operations of the Company at the highest levels;

c)  was privy to confidential proprietary information concerning the Company and its business and operations;

d)  was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e)  was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

f)  was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

g)  approved or ratified these statements in violation of the federal securities laws.

12.   The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.   The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14.   The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

15.   On April 16, 2019, after market hours, Netflix published its letter to shareholders which reported on the first quarter of 2019.  The letter to shareholders included forecasts for the second quarter of 2019, stating in relevant part:

4

> *For Q2'19, we project total paid net adds of 5.0m* (-8% year over year), **with 0.3m in the US and 4.7m for the international segment.** This would put us at 14.6m paid net adds for the first half of 2019, up 7% year over year.

(Emphasis added.)

16.     The letter to shareholders also discussed the recent price increases in Netflix subscriptions, stating in relevant part:

> *We're working our way through a series of price increases in the US, Brazil, Mexico and parts of Europe. The response in the US so far is as we expected* and is tracking similarly to what we saw in Canada following our Q4'18 increase, where our gross additions are unaffected, and we see some modest short-term churn effect as members consent to the price change.

(Emphasis added.)

17.     The letter to shareholders also discussed the scheduling of the release of several of Netflix's strongest original programing, stating in relevant part:

> *We're looking forward to a strong slate of global content in the second half of the year*, including new seasons of some of our biggest series, *Stranger Things* (July 4th), *13 Reasons Why*, *Orange is the New Black*, *The Crown and La Casa de Papel (*aka *Money Heist)* as well as big films like Michael Bay's *Six Underground* and Martin Scorsese's *The Irishman*, and expect another year of record annual paid net adds in 2019. We forecast an acceleration in both streaming ARPU (+2% vs. -2%) and total revenue growth (26% vs. 22%) in Q2 vs. Q1. Excluding currency, we forecast streaming ARPU and total revenue would rise 7% and 32%, respectively in Q2. While there will be some quarter-to-quarter lumpiness in operating margins due to the timing of spending, our full year 2019 operating margin target of 13% is unchanged, which means that we expect operating margin in the second half of the year will be higher than the first half.

(Emphasis added.)

18.     On April 16, 2019, after market hours, Netflix held an earnings call to discuss the results for the first quarter of 2019.  On this call, Defendant Neumann discussed anticipation subscription rates in the second quarter of 2019, stating in relevant part:

> *You can see that we guided to 5 million paid net adds in Q2*, which is similar to where we were a year ago. *There's definitely some seasonality to our business, which we see in Q2.* You see that again this year. But I'd say, in general, our paid net adds are very much in line with what we've been planning and targeting for the year. On a first half of the year basis, you see that 7% year-over-year growth. *The specific growth in Q2 is*

5

*more concentrated internationally. That's just, as we talked about last quarter, we're rolling through our price changes in the U.S., so that has some moderation on our net adds. And the good news there is that our -- the growth in our acquisition that we're acquiring are -- it's consistent in terms of our ability to kind of grow our subscribers. There's just some temporary churn that enters the system in the midst of rolling out those price changes.* But that's why you see more of the net adds weighted to our international segments in Q2 but overall very healthy, going according to plan and very strong growth for the first half of the year and putting us on track, as we also mentioned in the letter, for another year of record paid net add growth for the full year.

(Emphasis added.)

19.     Further on this call, the topic of the types of programing Netflix provides and some of the Company's most successful programs and strategy were discussed, stating in relevant part:

> Well, we've kept one strict principle around it, which was that these shows had to be very locally relevant. And to do that, you have to be pretty authentically local. So what we're trying not to do is try to inauthentically make a global show because basically that doesn't work for anybody. So the more authentically local the show is, the better it travels, which we've seen with Kingdom. So fans of K drama around the world loved that show, and it resonated incredibly well for us in Korea. Similarly, coming up, we have a new season of Rain coming out this quarter that is perfectly Swedish. We don't try to make it -- water it down or make it travel any better inorganically and have found that the best way to make global stories is to make them incredibly, authentically local

                              *       *       *

> Sure. I would just say maybe that there's a bunch of historical performance and modeling that we used to keep an eye on these things. But generally, I would say things are going as expected. And this is one of those relatively infrequent moments where as we invest more in the service, more great content, we got incredible movies coming like Irishman, Six Underground, improving the product experience, we occasionally go back to our subscribers and ask them to contribute a little bit more so that we can fund that next cycle of growth. And everything that we're seeing right now is very consistent with that model.

20.     The statements referenced in ¶¶ 15-19 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Netflix would not be able to gain its expected target number of new subscribers in the

6

second quarter of 2019; (ii) Netflix would also lose subscribers from the United States in the second quarter of 2019; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

### The Truth Emerges

21.     On July 17, 2019, after the market closed, Netflix released a letter to shareholders which revealed that Netflix missed its expected target for number of new subscribers, stating in relevant part:

> ***Paid membership grew by 2.7m, less than the 5.5m in Q2 a year ago and our 5.0m Forecast.***
>
> *       *       *
>
> ***Our missed forecast was across all regions, but slightly more so in regions with price increases.*** We don't believe competition was a factor since there wasn't a material change in the competitive landscape during Q2, and competitive intensity and our penetration is varied across regions (while our over-forecast was in every region). Rather, ***we think Q2's content slate drove less growth in paid net adds than we anticipated***. Additionally, Q1 was so large for us (9.6m net adds), there may have been more pull-forward effect than we realized. In prior quarters with over-forecasts, we've found that the underlying long-term growth was not affected and staying focused on the fundamentals of our business served us well. ***Q3 has started with Stranger Things season 3, and the first two weeks of Q3 are strong. In addition to the recently released season 3 of Stranger Things, our second half content slate includes new seasons of La Casa de Papel (Money Heist), The Crown, and the final season of the iconic Orange is the New Black as well as big films like The Irishman from Martin Scorsese and action movie 6 Underground (directed by Michael Bay and starring Ryan Reynolds).***

(Emphasis added.)

22.     The letter to shareholders revealed that Netflix lost 126,000 subscribers in the United States during the second quarter of 2019.

23.     Also on July 17, 2019, Netflix held an earnings call to discuss the second quarter of 2019 results.  On the call, Defendant Neumann discussed the reasons for the missed subscription target, stating in relevant part:

> I mean generally when we looked at the -- the slowdown in subscriber growth was across all of our regions. So you talk about our kind of top of funnel or gross adds, we

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

saw that slowdown across the board, which indicates to us some level of seasonality and kind of the overall, as we say, ***the kind of timing of the content slate***. And also, frankly, maybe a little bit more pull forward of our subscriber growth from Q2 to Q1 because we had such a strong Q1 with 9.7 million paid net adds. ***But we also did see in regions where we increased prices, we did see some elevated churn rates and lower retentions. So it was a combination of those 2 things. We think the primary story was around seasonality and timing and nature of our content slate, but pricing played a factor.***

(Emphasis added.)

24.     On this news, shares of Netflix plummeted $47.34 per share, or over 13%, from over the next two trading days to close at $315.10 per share on July 19, 2019, damaging investors.

25.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Netflix during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

27.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Netflix securities were actively traded on NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.   Record owners and other members of the Class may be identified from records

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

30.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- whether the prices of Netflix securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

32.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Netflix securities are traded in efficient markets;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Netflix securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

33.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

34.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

35.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

36.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

37.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

38.     The Company and the Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Netflix securities during the Class Period.

39. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

40. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

41. As a result of the foregoing, the market price of Netflix securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants'

12

statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Netflix securities during the Class Period in purchasing Netflix securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

42.     Had Plaintiff and the other members of the Class been aware that the market price of Netflix securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Netflix securities at the artificially inflated prices that they did, or at all.

43.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

44.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the Echange Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of Netflix securities during the Class Period.

**COUNT II**

**Violation of Section 20(a) of The Exchange Act**
**Against The Individual Defendants**

45.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.  Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

13

47.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

48.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Netflix securities.

49.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company.  By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

50.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

14

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

DATED:  July 31, 2019                    Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

15

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

***Attorneys for Plaintiff***

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Submission Date**

2019-07-25 09:34:14

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.   I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Netflix, Inc. ("Netflix" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Netflix securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Netflix securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Netflix securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Deepak Venkatachalapathy

**Signature**



**Netflix, Inc. (NFLX)**                                                    **Venkatachalapathy, Deepak**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 7/5/2019 | Purchase | 7 | $380.0000 |